UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CR3 OF INDIANA, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0991-DFH-JMS |
| | ) | |
| SPECIALTY SURFACES | ) | |
| INTERNATIONAL, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION TO DISMISS

Plaintiffs CR3 of Indiana, LLC and Quest Sports Surfacing, LLC engaged in some business deals in approximately 1999 to 2000 with defendant Specialty Surfaces International, Inc.  Defendants Henry Julicher and Margit Julicher are or were shareholders of Specialty Surfaces.  Henry Julicher was active in managing its business.  Plaintiffs filed a complaint in an Indiana state court on July 9, 2007, alleging a variety of claims against defendants, including claims for the price of goods sold, breach of contract, unjust enrichment, quantum meruit, negligence, conversion, fraud, and promissory estoppel.  Defendants removed to this court on the basis of diversity jurisdiction.  Defendants then moved to dismiss for lack of personal jurisdiction over Mr. and Mrs. Julicher and for failure to state a claim upon which relief can be granted on all claims.  As explained below, the court grants the motion to dismiss claims against Mrs. Julicher for lack of personal jurisdiction but finds that personal jurisdiction over Mr. Julicher appears

to be permissible on this limited record.  However, the court also grants the motion to dismiss all other claims for failure to state a claim.  The dismissal is without prejudice to plaintiffs' ability to file a second amended complaint if they believe they can cure the problems identified in this decision, consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure.  See *Barry Aviation Inc. v. Land O'Lakes Municipal Airport*, 377 F.3d 682, 690 (7th Cir. 2004) (holding that district court erred by dismissing without leave to amend).

I.      *Subject Matter Jurisdiction*

Plaintiffs' response to the motion to dismiss suggests that if plaintiffs can show on the merits that they entered into a joint venture or partnership with defendants, that proof would destroy diversity of citizenship and this court's subject matter jurisdiction.  The argument fails to consider the alignment of the parties.  Whether or not the plaintiffs and defendants were ever partners, the issue is whether all plaintiffs have citizenships different from all defendants.  The parties appear to be properly aligned here in terms of their adverse interests, and defendants have shown that diversity of citizenship is complete.  That conclusion remains valid regardless of the merits of plaintiffs' claims.

II.    *Personal Jurisdiction*

Mr. and Mrs. Julicher have submitted affidavits to the effect that they have essentially no ties to the state of Indiana.  They have not owned property or done business in Indiana, and they have not visited Indiana.  The business deals in question were between the Julichers' company, Specialty Surfaces in Pennsylvania, and the Indiana-based plaintiffs for the construction of sports facilities at schools and other places in Pennsylvania.  (The corporate defendant, Specialty Surfaces, reasonably concedes that it is properly subject to specific jurisdiction in Indiana in this case based on its business relationship with the plaintiffs.)

Plaintiffs have responded with an affidavit from William H. Gruppe, the manager of both plaintiffs, stating that he met face-to-face with Mr. Julicher and a lawyer for Specialty Surfaces once in Indianapolis in mid-2000.  For purposes of the motion to dismiss, the court accepts Mr. Gruppe's testimony that the meeting occurred, though he provides no information about the content of that long-ago meeting.[1]

---

[1]Mr. Julicher submitted an affidavit with the reply brief stating that he does not remember attending such a meeting.  Unless the court holds an evidentiary hearing on the jurisdictional issues, the court must accept plaintiffs' version of the evidence.  See *Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (stating that, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction"); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record) (internal quotation marks omitted).

To begin, there is no basis for finding personal jurisdiction over Mrs. Julicher, who is not alleged to have taken any actions personally in Indiana or directed toward Indiana. See *Ellis v. Fortune Seas, Ltd.,* 175 F.R.D. 308, 313 (S.D. Ind. 1997) ("A shareholder does not subject herself to litigation personally in states with which the corporation may have sufficient contacts."). She is entitled to dismissal of all claims against her for lack of personal jurisdiction.

Mr. Julicher invokes the fiduciary shield doctrine, arguing that this court lacks personal jurisdiction because all of his alleged contacts with the forum state were only as an agent of Specialty Surfaces. Def. Reply Br. 3. The fiduciary shield doctrine "precludes a state from exercising jurisdiction over an individual sued in his or her personal capacity if the only basis for jurisdiction is his or her contacts with the forum in which he or she was acting solely as a fiduciary of a corporation." *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 293 (S.D. Ind. 1993). The fiduciary shield doctrine, while still accepted in some jurisdictions, has been strongly criticized in several others, including the state where it was first adopted. See, *e.g.*, *id.* at 293-96 (outlining the history of the fiduciary shield doctrine and citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 47 (N.Y. 1988)). This court agrees with earlier decisions in this district predicting that the Indiana Supreme Court would reject the doctrine. See *Huber v. House*, No. 1:04-CV-1231, 2004 WL 3130618, at *3 (S.D. Ind. Dec. 7, 2004) (Tinder, J.); *Intermatic, Inc.*, 815 F. Supp. at 296 (McKinney, J.) (holding that "the fiduciary shield doctrine

cannot be asserted to defeat personal jurisdiction in Indiana").  The fiduciary shield doctrine does not defeat personal jurisdiction over Mr. Julicher in Indiana.

Mr. Julicher also contends that his personal contacts with Indiana are simply too insubstantial to comport with due process.  A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant to the same extent that a state court in the forum state would.  *Citadel Group Ltd. v. Washington Regional Medical Center*, — F.3d —, 2008 WL 2971807, at *2 (7th Cir. Aug. 5, 2008); *NUCOR Corop. v. Aceros y Maquilas de Occidente*, 28 F.3d 572, 579-80 (7th Cir. 1994).  An Indiana state court has personal jurisdiction over a defendant when the exercise of jurisdiction comports with federal due process.  *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961,967 (Ind. 2006); Ind. T.R. 4.4(A) ("a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States").

"Due process limits when a state may exercise personal jurisdiction over nonresident defendants."  *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir 2004), citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 108 (1987), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  This limit enables potential defendants to structure their business contacts with different states so as to anticipate where they may be liable to suit. *Jennings*, 383 F.3d at 549, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985), and *World-Wide Volkswagen*, 444 U.S. at 297.

Plaintiffs argue that the court has specific jurisdiction over Mr. Julicher, rather than general jurisdiction.  Specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state.  See *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  To invoke specific jurisdiction, "a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, and that the exercise of personal jurisdiction over the defendant would comport with traditional notions of fair play and substantial justice." *Jennings*, 383 F.3d at 549 (citations and quotations omitted).

A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant if it creates a "substantial connection" with the forum state and the suit is related to that connection.  *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).  Mr. Gruppe contends that he met with Mr. Julicher and a lawyer of Specialty Surfaces once in Indianapolis in mid-2000, though the affidavit is notably vague about any specifics tying that meeting to the transactions and events that gave rise to the lawsuit.  On this sketchy record, that meeting provides at best marginal support for exercising jurisdiction over Mr. Julicher.

Plaintiffs argue that the court may exercise personal jurisdiction over Mr. Julicher under the "effects doctrine" with regard to plaintiffs' tort claims.  Under the "effects doctrine," specific jurisdiction is appropriate when a defendant directs

intentional, tortious actions at the forum state that harm a plaintiff in the forum state and the defendant knows that the plaintiff would be likely to suffer harm there. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); accord, *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (exercising personal jurisdiction in Illinois court where California defendant allegedly made a threatening telephone call to Illinois plaintiff's customer in New Jersey, causing injury in Illinois), citing *Indianapolis Colts v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411-12 (7th Cir. 1994). The complaint alleges Mr. Julicher engaged in intentional tortious conduct, including fraud, that he knew would cause the plaintiff's economic injury in Indiana. For purposes of the motion to dismiss for lack of subject matter jurisdiction, the court treats those allegations as true. On this very limited record, the court concludes that it may exercise personal jurisdiction over the individual claims against Mr. Julicher, as well as all claims against the corporate defendant, Specialty Surfaces International.

III.    *Failure to State a Claim*

    A.    *Standard for Dismissal*

In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in favor of the plaintiff.  *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005).  Under the Federal Rules, a plaintiff pleads claims, not facts or legal theories.  While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion to dismiss, it is not enough merely that there might be some conceivable set of facts that entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41 (1957).  Rule 8(a)(2) requires a plaintiff to state the grounds that entitle it to relief.  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1965.  Factual allegations must be enough to raise a right to relief above the speculative level, treating the factual allegations as true.  *Id*.

The court is not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claims, nor must the court give any weight to unsupported conclusions of law.  *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.1998), quoting *R.J.R. Services, Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1989).  Despite

this high standard for dismissal, when a plaintiff "pleads facts that show his suit is time barred or otherwise without merit, he has pleaded himself out of court." *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993).

B.   *Alleged Failure to Provide Personal Guarantees*

In connection with the Powers Memorial Field project in Uniontown, Pennsylvania, Specialty Surfaces was required to provide performance and payment bonds.  Plaintiffs allege that Henry Julicher told them that the insurance company that would issue the payment bond would require personal guarantees from the principals of plaintiffs and defendants (the Julichers), and that the Julichers never actually provided such personal guarantees.

Defendants argue that the plaintiffs have failed to state a claim upon which relief can be granted because the applicable statute of frauds requires a writing (signed by the alleged promisor or his agent) to enforce an alleged "special promise, to answer for the debt, default, or miscarriage of another."  See Indiana Code § 32-21-1-1(b)(2).  The parties have briefed the issue on the assumption that Indiana law applies to this question.  The court accepts that apparent agreement. There are numerous issues apparent with respect to this claim, but the court limits its consideration to the statute of frauds issue as framed by the briefs.

A complaint need not anticipate and negate affirmative defenses, but where the complaint itself sets forth facts establishing the affirmative defense, dismissal under Rule 12(b)(6) may be appropriate. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). A suit on a personal guaranty would ordinarily be expected to have a signed written guaranty attached to the complaint. This complaint did not allege, and plaintiffs admit that they do not have, a writing signed by Mr. Julicher (or Mrs. Julicher) promising to be personally liable for the debts of Specialty Surfaces. Pl. Br. 11 (referring to "oral agreement and representations between the parties" on this claim). That factual concession should be sufficient to defeat the personal guaranty claim.

Plaintiffs argue that they should be excused from the statute of frauds because such a guaranty was required by Pennsylvania law. Plaintiffs rely on a 1928 decision, *Miller v. McDonald*, 159 N.E. 551, 553 (Ind. App. 1928), in which plaintiff sued on a surety bond for payment for work on an Indiana state highway construction contract. The Indiana Court of Appeals held that the statute of frauds for guaranty agreements did not apply because the guaranty was required by law.

Plaintiffs rely on a Pennsylvania statute that requires prime contractors for contracts for public works in excess of $5,000 to provide a performance bond and

a payment bond.  8 Penn. Stat. § 193.[2]  Assuming only for purposes of argument: (a) that plaintiffs may blend Indiana and Pennsylvania law in this unusual way, (b) that Pennsylvania law in fact required the prime contractor to provide a payment bond, and (c) that plaintiffs may qualify as a supplier of labor or materials, the Pennsylvania law still does not save plaintiffs' claim from the statute of frauds.  The reason is that the Pennsylvania law applies only to the payment bond provided by the prime contractor itself.  If a surety seeks additional private guarantees, such as from the shareholders of the corporation that acts as the prime contractor, that is a private matter between the shareholders and the surety company.  The Pennsylvania statute did not require Mr. Julicher to provide a personal guaranty.  He is entitled to rely on the applicable Indiana statute of frauds to defeat the claim that he made an oral promise to provide such a guaranty.

---

[2]The precise status of § 193 is not clear.  It appears that the section was repealed to the extent that it was inconsistent with the enactment of chapter 58 of Title 53 of Pennsylvania statutes, pursuant to 2002, Dec. 30, P.L. 2001, No. 230, § 8(1), which was in turn held unconstitutional in *Philadelphia v. Commonwealth*, 838 A.2d 566 (Pa. 2003).  Also, the court has not tried to determine the relationship between § 193 and § 193.1, which also deals with payment and performance bonds on Pennsylvania public contracts.  For the reasons stated in the text, if the statutes apply here, they do not save plaintiffs' claim from the statute of frauds.

C.    *Statutes of Limitations*

The parties agree that Indiana law governs the plaintiffs' claims.  Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), statutes of limitations on state law claims are considered substantive law.  *Jinks v. Richland County*, 538 U.S. 456, 465 (2003), citing *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945).  Plaintiffs assert seven causes of action against defendants:  (1) breach of contract, (2) breach of implied duty of good faith, (3) unjust enrichment, (4) negligence, (5) fraud, (6) conversion, and (7) estoppel.  All of them are barred by the applicable Indiana statutes of limitations.

1.    *Breach of Contract – October Orders (Two Contracts)*

Plaintiffs allege that the defendants ordered and never paid for 18,040 pounds of red rubber on October 3, 2000 and 12,000 pounds of 8/20 mesh on October 16, 2000.  First Am. Cmplt. ¶¶ 7-15.  Under Indiana's enactment of the Uniform Commercial Code:  "An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued."  Ind. Code § 26-1-2-725(1).  A cause of action begins to accrue under § 26-1-2-725(1) "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  Ind. Code § 26-1-2-725(2) see *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 531 (7th Cir. 1999) (affirming dismissal under Rule 12(b)(6) where complaint showed this statute of limitations had run).

The October 2000 invoices state the terms for payment as "Net 30," indicating the alleged breach for non-payment would have occurred 30 days after the invoice date.  First Am. Cmplt., Exs. 3, 5.  Because the plaintiffs filed the complaint on July 9, 2007, approximately six and one-half years after the invoices allegedly became overdue, the claim is time-barred under Indiana law.

The amended complaint also alleges that the defendants lulled the plaintiffs into a false sense of trust and confidence by promising to pay them for the October orders.  The defendants, the plaintiffs plead, should therefore be estopped from affirmatively asserting the four-year statute of limitations.  First Am. Cmplt. ¶ 76.

Estoppel is an equitable doctrine designed to stop an injustice that, without its application, might otherwise result.  *Little v. Progressive Insurance Co.*, 783 N.E.2d 307, 315 (Ind. App. 2003).  A plaintiff can use the doctrine of equitable estoppel to bar a defendant from asserting the statute of limitations if the relevant criteria are met.  *Caito Foods v. Keyes*, 799 N.E.2d 1200, 1202 (Ind. App. 2003).  Under Indiana law, the elements of equitable estoppel are:  (1) a representation or concealment of a material fact; (2) made by a party with knowledge of the fact and with the intention that the other party act upon it; (3) to a party ignorant of the fact; and (4) which induces the other party to rely or act upon the fact to his detriment.  *Id.*  The basis for equitable estoppel is fraud, either actual or constructive, on the part of the person estopped.  *Paramo v. Edwards*, 563 N.E.2d

595, 598 (Ind. 1990).  Before a defendant's use of the statute of limitations may be barred by the doctrine of estoppel, "the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action." *Paramo*, 593 N.E.2d at 599, quoting *Guy v. Schuldt*, 138 N.E.2d 891 (Ind. 1956).  If two parties "stand mentally on equal footing, and in no fiduciary relation, the law will not protect a person who failed to exercise common sense and judgment." *Paramo v. Edwards*, 563 N.E.2d 595, 599 (Ind. 1990), quoting *Gatling v. Newell*, 9 Ind. 572 (1857).  The conduct must be "of a caliber calculated to lead the other party to inaction." *Id.*[3]

Assuming for purposes of argument that equitable estoppel might be available to plaintiffs in their relationship with defendants, as a matter of law, equitable estoppel still cannot bar the defendants from asserting the statute of limitations as an affirmative defense in this case.  Payment for the orders allegedly placed by defendants in October 2000 was due by November 16, 2000.  The plaintiffs did not file their complaint until July 9, 2007.  The plaintiffs are effectively requesting this court to toll the statute of limitations nearly *three years* based on allegations that defendants lulled the plaintiffs into believing they would eventually be paid.  That is simply too long.

---

[3]Whether the two parties are on equal footing is a decisive factor in equitable estoppel claims.  See *Farrington v. Allsop*, 670 N.E.2d 106, 110 (Ind. App. 1996) (distinguishing between "cases involving representations made by insurers to the opposing party's attorney (no estoppel found) with cases involving representations made by insurers directly to the plaintiff (estoppel found)").

The plaintiffs have alleged facts showing that, through ordinary diligence and common sense, they should have been aware of an alleged breach in November 2000 when no payment was received.  Plaintiffs did not allege and have not argued that the defendants induced the plaintiffs not to bring suit against them with promises of payment or settlement, waiting until the statute of limitations had long expired before revealing their fraudulent intentions.  And even assuming for purposes of argument that equitable estoppel might have been available to extend the statute of limitations for a relatively short period of time, it could not reasonably be extended as long as would be needed to save this claim. There is no suggestion here that plaintiffs and defendants are not equally sophisticated in business dealings.  If the plaintiffs had exercised ordinary diligence, an estoppel defense would be unnecessary.  As a matter of law, promises of future payment or other alleged lulling could not extend the doctrine of equitable estoppel by the more than two and one-half years that would be needed to save this claim.  The breach of contract claim for the October 2000 orders is time-barred under Indiana law, and the claim is dismissed.

2.     *Breach of Contract – Joint Venture Agreement*

Plaintiffs claim they had a written joint venture agreement with the defendants that would permit a ten-year statute of limitations under Indiana law. The one-page memorandum signed by Mr. Julicher and Mr. Gruppe, however, is nothing more than an agreement to agree.   The memorandum states in its entirety:

> As we discussed, Sprinturf, Inc. is bidding the job today with the patented Sprinturf System, and if successful, will proceed to do the work in a joint venture type relationship with Quest Sports Surfacing.  We will work out how responsibilities will be shared.  (Financing, Bonding, Warantee [sic] Issues, Execution of the job, Etc.)
>
> This will be mutually beneficial and hopefully get us together face to face sooner rather than later.

Def. Br. at Ex. C.  The court may consider this document on a Rule 12(b)(6) motion to dismiss because the complaint refers to it and it is central to plaintiffs' claims.  *E.g.*, *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Venture Associates v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993); see generally *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002) (dicta discussing this rule).

Under Indiana law, the document is not a legally binding contract.  The Indiana Supreme Court observed in *Wolvos v. Meyer*:  "If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called 'contract to contract' is

not a contract at all."  668 N.E.2d 671, 674-75 (Ind. 1996), quoting Corbin on

Contracts § 2.8 at 133-34 (rev. ed. 1993); accord, *Eastern Natural Gas Corp. v.*

*Aluminum Co. of America*, 126 F.3d 996, 1002 (7th Cir. 1997) (applying Indiana

law and stating:  "A letter that does not contain definite and specific terms, and

that is contingent upon further negotiations and execution of a final agreement,

is not a contract under Indiana law."); see also *Baker O'Neal Holdings, Inc. v.*

*Massey*, 403 F.3d 485, 488 (7th Cir. 2005) (applying Michigan law and holding

that one-page agreement for sale of group of automobile dealerships lacked vital

terms and was an unenforceable agreement to agree).  Several material terms that

would be necessary for this short document to be an enforceable written contract

are entirely absent.  The plaintiffs and defendants had at most an oral agreement

to complete the Powers Memorial Field project in a joint-venture relationship.  The

ten-year statute of limitations is not available on this claim.


      Under Indiana law, an action for contracts not in writing must be brought

within six years after the cause of action accrues.  Ind. Code § 34-11-2-7(1).  An

action accrues, and the statute of limitations begins to run, when the plaintiff

knew of or could have discovered an injury.  *Doe v. United Methodist Church*,

673 N.E.2d 839, 842 (Ind. App. 1996).  This discovery rule applies to both

contract and tort claims.  *Hagin v. Bruning*, 613 N.E.2d 61, 64-65 (Ind. App.

1993).

The letter sent by plaintiff Quest Sports Surfacing to Mr. Julicher on July 20, 2000 indicates the plaintiffs planned to complete the installation work at Powers Memorial Field "by no later than August 15, 2000." Def. Br., Ex. B. The plaintiffs allege that the defendants' final payment for the Powers Memorial Field project was due from the customers of the project on October 9, 2000. First Am. Cmplt. ¶ 22.

The plaintiffs argue that the statute of limitations did not begin to run until at least November 2001. The defendants argue that, because the installation work on the Powers Memorial Field project ended by August 15, 2000, it would be unreasonable to believe it took the plaintiffs over a year to realize the defendants did not intend to honor their alleged joint venture agreement. The court agrees with the defendants. If all work was completed on the Powers Memorial Field project in August 2000, the plaintiffs – by exercising ordinary diligence – should have been able to ascertain shortly thereafter that the defendants were not going to fulfill their (alleged) obligations.

The statute of limitations began to accrue no later than late 2000. Plaintiff's filed their complaint on July 9, 2007, more than six and one-half years after the defendants were allegedly owed their final payment from the customers of the Powers Memorial Field project, and more than six months after the six-year statute of limitations had run. There is no basis for estoppel to prevent defendants from relying on the statute of limitations. The claim for breach of the

alleged joint venture agreement is barred under the applicable statute of limitations.

### 3. *Breach of Implied Duty of Good Faith*

The plaintiffs allege in count two that the defendants breached an implied duty of good faith by "failing to conduct themselves according to the terms of their agreements with Plaintiffs; by failing to provide accurate information regarding the installation; by withholding information relating to monies received by Defendants; by withholding payment due to Plaintiffs and by otherwise concealing the nature of the partial payments received by Defendants."  First Am. Cmplt. ¶ 41.

Unlike many states, Indiana does not require a general duty of good faith be implied in every contract.  *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).  As the defendants correctly argue, for this claim to be successful, the plaintiffs would need to prove that the defendants owed the plaintiffs some type of fiduciary duty arising out of their business dealings.  Def. Br. at 9.  See *Hurco Cos. v. Kuehne & Nagel, Inc.*, No. IP 00-0697-C, 2001 WL 1386077, at *3 (S.D. Ind. Sept. 28, 2001) (Tinder, J.) (noting that courts require party with fiduciary duty to act with loyalty, candor, and honesty).

Assuming for the sake of argument that the defendants owed the plaintiffs a fiduciary duty, the claim would nevertheless fail because of the applicable

statute of limitations.  Indiana courts have concluded that a breach of a fiduciary duty is a tort claim for injury to personal property and thus subject to a two-year statute of limitations in Indiana Code § 34-11-2-4(2).  See, *e.g.*, *Hurco Cos.*, 2001 WL 1386077, at *3; *O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*, 786 F. Supp.1442, 1447-49 (S.D. Ind. 1992).  The plaintiffs allege that the plaintiffs and defendants continued to have discussions regarding the money owed to the plaintiffs from the Powers Memorial Field project until the end of 2001.  First Am. Cmplt. ¶ 31.  The defendants argue that the statute of limitations should begin accruing about a year earlier, around the end of 2000.  Def. Br. at 9.  That is almost certainly correct, but for this particular claim, the court need not determine exactly when the statute of limitations started to run.  Even if the plaintiffs were not aware of the defendants' alleged bad faith in honoring their existing agreements with the plaintiffs until the end of 2001, the plaintiffs did not file their complaint until July 9, 2007.  Under the applicable two-year statute of limitations, the plaintiff's claim for breach of implied duty of good faith must be dismissed.

### 4.    *Unjust Enrichment*

Plaintiffs allege in count three a claim for unjust enrichment based on defendants' failure to pay for the products plaintiffs supplied for the Uniontown project.  Indiana courts apply a six year statute of limitations to claims for unjust enrichment.  *King v. Terry*, 805 N.E.2d 397, 400 (Ind. App. 2004) (applying Ind.

Code § 34-11-2-7).  The analyses above for the breach of contract claim subject to a six year statute of limitations and the breach of contract claim subject to a four year statute apply to this claim as well.[4]

           5.     *Negligence and Conversion Claims*

The plaintiffs allege two similar tort claims – negligence and conversion. Both claims focus on the October 2000 orders and the Power Memorial Field project in Uniontown, Pennsylvania.  Both tort claims are subject to a two year statute of limitations.  See *Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 459 (Ind. App. 2000) (noting that Ind. Code § 34-11-2-4 governs actions that are based in tort); *French v. Hickman Moving and Storage*, 400 N.E.2d 1384, 1388 (Ind. App. 1980) (applying two year statute to civil claim for conversion).

The statute of limitations begins to run on a tort claim when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of another.   *Wehling v. Citizens Nat'l Bank*,

---

[4]The unjust enrichment claim also fails because the parties allegedly had a valid contract.  A contract "precludes application of quantum meruit [unjust enrichment] because (1) a contract provides a remedy at law and (2) – as a remnant of chancery procedure – a plaintiff may not pursue an equitable remedy when there is a remedy at law."   *King*, 805 N.E.2d at 400, citing *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (1991), and *Clark v. Peoples Savings & Loan Ass'n*, 46 N.E.2d 681, 682 (Ind. 1943).  The court must assume that plaintiffs had an adequate remedy at law but simply failed to seek that remedy within the generous periods allowed for them to do so.  A failure to bring a timely action at law for breach of contract does not justify resort to the equitable doctrine of unjust enrichment to cure the error.

586 N.E.2d 840, 842-43 (Ind. 1992).  Plaintiffs allege that in late 2001 it became apparent the defendants "had no intention of honoring the terms of their agreement with Plaintiffs."  Pl. Br. 14.  Defendants argue that plaintiffs, exercising ordinary diligence, could have discovered any alleged injury by late 2000.  Regardless of whether the statute of limitations began to accrue in late 2000 or 2001, the negligence and conversion claims are also time-barred by the applicable two-year statute of limitations.

D.    *Fraud*

Plaintiffs allege that the defendants fraudulently promised to participate in a joint venture relationship with the plaintiffs at Powers Memorial Field in Uniontown, Pennsylvania.  First Am. Cmplt. ¶¶ 17, 18, 25, 57.  The fraud claims must be dismissed for two independent reasons:  first, plaintiffs have alleged only false promises, not false representations of facts; and second, the claims are barred by the statute of limitations.

When a party alleges deceptive promises that the promisor did not intend to keep, the claim is one for "promissory fraud" that Indiana law does not recognize.  *Banco Del Atlantico, S.A. v. Stauder*, No. 1:03-cv-1342-LJM-VSS, 2005 WL 1925830, at *4 (S.D. Ind. Aug. 11, 2005); *Simon Property Group, L.P. v. mySimon, Inc.*, No. IP 99-1195-C, 2000 WL 1206575, at *2 (S.D. Ind. Aug. 3, 2000) ("actionable fraud cannot be predicated upon a promise to do a thing in the

future, although there may be no intention of fulfilling the promise"), quoting *Sachs v. Blewett*, 185 N.E. 856, 858 (Ind. 1933), and citing *Wright -Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 141 (7th Cir. 1990), and *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1412 (7th Cir. 1986).  The plaintiffs therefore have no actionable claim for fraud against the defendants relating to their alleged joint venture at Powers Memorial Field.

Plaintiffs also contend that the defendants made false statements about securing and underwriting a bond in the plaintiffs' favor for work performed on the Powers Memorial Field project.  First Am. Cmplt. ¶ 58.  Assuming for purposes of argument that this allegation could satisfy the elements of actual fraud,[5] the court is dismissing the claim against Mr. Julicher for alleged breach of an oral promise to provide a personal guaranty.  Under Indiana's statute of frauds, a party may not bring an action charging another party upon any special promise to answer for a debt unless the promise on which the action is based "is in writing and signed by the party against whom the action is brought."  Ind. Code § 32-21-1-1. Indiana does not recognize a claim for promissory fraud.  Additionally, Mr. Julicher may defeat a claim that he made false statements about securing and

---

[5]The elements for actual fraud are as follows:  (1) a material representation of a past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining part, and (6) proximately caused injury to the complaining party.  *Bilimoria Computer Systems*, *LLC v. America Online, Inc.*, 829 N.E.2d 150, 155 (Ind. App. 2005).

underwriting a bond for work performed on the Powers Memorial Field project by relying on Indiana's statute of frauds, as explained above.

Plaintiffs' fraud claims are also barred by the six year statute of limitations in Indiana Code § 34-11-2-7, consistent with the earlier discussion of other claims.  Plaintiffs therefore have no actionable fraud claim available against the defendants under Indiana law.

*Conclusion*

For the reasons explained above, all claims against Mrs. Julicher are dismissed for lack of personal jurisdiction.  All claims against Specialty Surfaces and Mr. Julicher are dismissed for failure to state a claim upon which relief can be granted.  The dismissal is without prejudice to plaintiffs' ability to file a second amended complaint no later than September 19, 2008, to the extent they may do so consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure.  If no amended complaint is filed, the court will enter final judgment consistent with this entry.

So ordered.

Date:  August 19, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Byron Joseph Davis
Attorney at Law
bjosephdavis@comcast.net

Alexis A. Sumner
DANN PECAR NEWMAN & KLEIMAN
asumner@dannpecar.com

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com